OPINION OF THE COURT
Stephen G. Crane, J.
The defendants move to dismiss their respective indictments for failure to voir dire the grand jurors. They argue that the integrity of the Grand Juries was undermined by the omission of questioning to ascertain whether the grand jurors could be *120 fair and impartial and base their votes solely on the evidence. The voir dire supposedly would have revealed whether they would be influenced by their emotions concerning the Palestinian-Israeli conflict, by ethnic bias or by the publicity allegedly surrounding the "Palestinian-American” demonstration at the Israeli Mission to the United Nations on May 22, 1990 from which these charges stem.
The defendants are charged with assaulting police officers, riot and inciting to riot. While they do not establish the intensity of the media coverage of this event or their arrests, they assert there was publicity of the demonstration and, of course, of the developments abroad that preceded and were being protested by it. They also argue that New York City, especially, is focused on the Palestinian-Israeli conflict and the intifada. Indeed, this conflict is an international ingredient in the politics of this city equal in value to many local issues. Thus, defendants believe that only an intensive voir dire could have revealed the prejudices against defendants or their cause harbored by citizens who served on the Grand Juries that indicted them. They contend that they may have been indicted by individuals influenced by this animus, thus depriving them of a fair and impartial Grand Jury.
The People rely on the presumption of regularity.
There is no Federal constitutional right to be prosecuted by indictment following presentation of evidence to a Grand Jury, but when a State has a Grand Jury system, the United States Constitution (5th, 14th Amends) mandates fairness and impartiality, as does the New York Constitution (art I, § 6). This mandate is the essence of due process. Defendants would translate its recognition automatically into a per se requirement that grand jurors be examined about their possible biases. Neither constitutional due process nor public policy dictates this result.
First is the distinction in function between the Grand Jury and the petit jury; the one accuses and the other determines. Second, the precedents mandating close examination of trial jurors rarely, if ever, apply to grand jurors. Third, there is not a whit of evidence that the Grand Juries that indicted these defendants, principally for their conduct in injuring police officers, were in any way biased against them due to the cause they espoused.[1]
*121 These cases do not raise issues of systematic exclusion of a particular ethnic group from the Grand Jury. (See, Castaneda v Partida, 430 US 482; Hill v Texas, 316 US 400; United States v Dioguardi, 332 F Supp 7, 20 [SD NY 1971].) Neither do these defendants draw strength for their applications from procedures implicated in People v Prior (268 App Div 717, affd 294 NY 405) and People v Brophy (304 NY 391). The procedure of Code of Criminal Procedure § 239 (6), later codified in Code of Criminal Procedure § 232, has receded in favor of a system, no longer based on challenges, in which the court may refuse to swear a grand juror upon a finding of disqualification (CPL 190.20 [2] [b]).[2]
Modern constitutional jurisprudence indulges a presumption of regularity. This places the burden on the defendants to make a specific showing of prejudice from the publicity or the state of mind of the grand jurors. (Beck v Washington, 369 US 541, 548-549; Melville v Morgenthau, 307 F Supp 738, 740-741 [SD NY 1969]; Matter of Democratic County Comm. v Nadjari, 52 AD2d 70, 74.) These authorities strongly imply, if they do not express, that it is unnecessary to voir dire the Grand Jury in the absence of specific proof of prejudice or special circumstances.
The defendants have made no showing of prejudice or special circumstances. Their cases are rather pedestrian, involving, in large measure, accusations of assaults against police officers. The defendants have failed to demonstrate the overarching media coverage of the intensity that prompted a voir dire of the second Grand Jury in People v Goetz (131 Misc 2d 1, 2, 13-14, affd 116 AD2d 316, revd on other grounds 68 NY2d 96).
*122 In Melville v Morgenthau (supra, at 741), District Judge Pollack hinted at an important public policy when he wrote: "To allow [defendants] * * * to conduct a voir dire of the grand jury to determine whether any member thereof was unduly influenced by reports in the news media would lead to chaos and confusion in the workings of the grand jury every time an indictment is returned in a case which catches the public eye and draws the attention of the press.”
This public policy encourages promptness in accusing or clearing persons suspected of criminal behavior. It includes consideration of the burdens on prosecutors and grand jurors that automatic voir dire in arguably sensitive cases would impose. It even implicates the First Amendment right of news organizations to report on crime, for overuse of voir dire of grand jurors might create pressure for diminished media coverage.
Considering the limited function of the Grand Jury as an accusatory body and the safeguards (to avoid the prejudice defendants now perceive) inherent in the voir dire of trial jurors, this court, sensitive as it is to defendants’ concerns, is of the opinion that defendants have been accorded due process at the accusatory stage. At least, they have not made the showing necessary to demonstrate the contrary. The Grand Juries are deemed to have acted with regularity, particularly since their accusations are essentially of assaults on police officers. The motions to dismiss the indictments are denied.

. The court has not released to the defendants the minutes of the *121 presentations. (CPL 210.30 [3].) It has, however, examined the minutes with great care. The only passage bearing on the issue under consideration was a remark by a grand juror who suggested "P.L.O. Demonstration” as the password for the next session. Another grand juror rhetorically asked whether this password were not prejudicial. This short byplay seems to indicate that the contrary of prejudice — i.e., sensitivity and tolerance, prevailed in the Grand Jury. Moreover, this password was no indication of prejudice on the part of the grand juror who suggested it. The May 22, 1990 demonstration was not a "P.L.O. Demonstration” by adherents to that extremist organization of terror. It was a "Palestinian-American” sponsored gathering. Yet, some testimony before the Grand Jury characterized it as a P.L.O. Demonstration. This was the evidence in the Grand Jury, whether or not accurate, that adequately explains the password controversy.

. The Criminal Procedure Law replaced the Code of Criminal Procedure effective September 1,1971. (L 1970, ch 996.)