OPINION OF THE COURT
Burton G. Hecht, J.
Upon the foregoing papers this writ of habeas corpus is hereby dismissed.
The pertinent undisputed background facts are as follows: Relator was paroled on December 21, 1976. After serving nearly five years on parole supervision relator was arrested on October 8, 1981 in New York County for criminal possession of an unauthorized use of a motor vehicle in which he allegedly was a passenger. Relator was thereafter arraigned in Criminal Court, New York County, and Paul Rubenfeld, an attorney, was assigned to represent him.
Relator’s parole officer learned of his arrest both through a law enforcement computer printout and through telephone notification from the relator’s wife. On November 13, 1981, approximately one month after an attorney had been assigned to represent relator, relator’s parole officer, *314 Brian Rooney came to relator’s place of detention at Rikers Island, and questioned him about his arrest on October 8, 1981. In response to the parole officer’s questions, the relator allegedly made incriminating statements.
On December 18, 1981 relator was given a preliminary parole revocation hearing at Rikers Island. The Division of Parole elected to proceed on one of five listed charges under which relator was alleged to have met two individuals for the purpose of arranging a drug purchase. Parole Officer Rooney testified that relator told him that on the night of his arrest he agreed with one Paterson to meet with two other individuals for the purpose of arranging a drug sale by Paterson to the two others. The officer further claimed that relator told him that he met the two individuals, got into a car with them, and proceeded toward an unknown destination.
The hearing officer found probable cause based upon the parole officer’s testimony and directed that relator be held for a final revocation hearing.
Counsel contends that the parole officer’s questioning of the relator regarding the circumstances of the underlying criminal charges upon which an attorney had already been assigned in the criminal proceeding violated relator’s constitutional right to counsel and, hence, any statements obtained thereby are inadmissible as against relator at his preliminary parole revocation hearing.
Respondent’s argument is essentially that although counsel had already been assigned to represent relator for purposes of his criminal court matter, it is nonetheless irrelevant to the more limited question of right to counsel in the parolee-parole officer setting.
In determining whether relator’s admissions were tainted by reason of any Sixth Amendment violation committed by the parole officer it would be helpful to examine the essential character of the parole process; to what extent it relates to the criminal process; and its applicability to relator’s constitutional right to counsel.
The character and nature of the parole proceeding has long been held as not to be part and parcel of criminal proceedings. (Mempa v Rhay, 389 US 128.)
*315 “The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence * * * We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations * * * Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observation of special parole restrictions.” (Morrissey v Brewer, 408 US 470, 477-480.)
Conceptually, parole is sociological rather than penological. The basic premise of parole is for the supervising parole officer to establish a working and meaningful relationship with the parolee in order to serve two distinct functions. The first is to aid the convicted felon with the difficult process of reintegration and re-entry into society. The second is to benefit the society at large by the addition of a productive “culturally” compatible individual and conversely to guard against the premature introduction of a person whose actions are indicative of insufficient rehabilitation. There must be complete and open communication between the parties to the parole agreement in order to accomplish this result. (See People v Parker, 101 Misc 2d 800.) A portion of this open exchange must include information as to the actions of the parolee which, were this a criminal proceeding, might constitute crimes. The underlying purpose of such dialogue is not to produce evidence for a subsequent criminal trial, but to determine the parolee’s degree of co-operation or reintegration or lack thereof. (See People ex rel. Maggio v Casscles, 28 NY2d 415.)
Furthermore, the parole officer is mandated by statute (Executive Law, § 259-a, subd 5) to “conduct such investigation as may be necessary in connection with alleged violations of parole”. The Appellate Division, First Department, noted in People ex rel. King v New York State Bd. of Parole (65 AD2d 467, 468): “His [referring to parole officer] independent inquiry, mandated by statute, resulted in the admission by [parolee] and should be susceptible of consideration at a revocation hearing * * * Since we view the parole officer’s inquiries as a proper execution of his duties, *316 we hold that [parolee’s] statements to him would be admissible at the revocation hearing. We note at this juncture that a parole revocation hearing is not a stage of a criminal prosecution * * * and the standards applied to the former do not carry over to the latter”.
It is clear that as a matter of State constitutional law, New York’s highest court has stated that a parolee has an absolute right to be represented by counsel at a final parole revocation hearing. (People ex rel. Menechino v Warden, Green Haven State Prison, 27 NY2d 376.) However, to argue that a parolee is similarly entitled to the presence of an attorney during preliminary fact-finding interviews within the parameters of the conditions of parole, indicates a misperception of the lines of demarcation between criminal proceedings and parole proceedings. “To hold that the [parolee] is entitled to the aid of counsel every time he is to be interviewed or questioned by his supervising officer would materially hamper if not destroy the entire purpose of parole status.” (People v Parker, supra, p 804.)
The parole officer must be allowed to perform his duty to investigate parole violations. Whatever information the parole officer’s investigation uncovers is for use only at the parole revocation hearing, an administrative not a criminal proceeding. To impose a Sixth Amendment right to counsel restriction in the parolee-parole officer relationship at this early stage of inquiry, would make the parole officer’s task impossible. Hence, this court determines that the statements made by the relator were properly admitted into evidence at his preliminary hearing and said statements formed a sufficient legal basis for the finding of probable cause.